This Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Porter M. Kennedy presiding. Good morning, everyone. Pleased to be seated. This is the final case we've got this morning. Case 3-24-0513. People of the State of Illinois plaintiff Appellate E. Daryl E. Holman defending her. Arguing on behalf of the Appellant, Ms. Dominique Estes. Arguing on behalf of the Appellate, Ms. Diane L. Kennedy. All right, Ms. Estes, you may begin when ready. Please feel free to adjust the microphone as needed. Good morning, Your Honors, and may it please the Court, my name is Dominique Estes and I represent the Appellant in today's case, Mr. Daryl Holman. Good morning. Mr. Holman raised three arguments in his briefing, however, and I'm happy to take questions on any of those arguments, but I will focus my remarks today on the issues related to Holman's sentencing, and in particular the issue concerning the Supreme Court's recent decision in Erlinger v. United States. Holman was convicted of theft from a person, a Class III felony, normally punishable by two to five years in prison. At sentencing, the trial court determined that Holman was extended term eligible based on a prior conviction for armed violence from 2008. The trial court sentenced Holman within the extended range to a term of six years. The trial court also made an improper finding at sentencing that Holman did not mitigate harm to the victim. The trial court's finding that Holman was extended term eligible violated his Sixth Amendment right to a jury trial, and for those reasons, this court should either reduce Holman's sentence to lie within the non-extended range or remand for a new sentencing hearing. In Apprendi v. New Jersey, the United States Supreme Court announced a landmark case in constitutional law announcing that any fact that increases a defendant's sentence beyond the normal statutory range must be submitted to a jury and proved beyond a reasonable doubt. The court maintained one exception to that rule, which is the exception that a judge may find the fact of a prior conviction. Most recently, in Earlinger v. United States, the court clarified that this exception allows judges to find the prior crime and its elements, but no more than that. Facts related to prior convictions, including facts about whether the conviction occurred on a separate occasion, go outside the scope of that exception, and those facts must be decided by a jury beyond a reasonable doubt. The court once again repeated in Earlinger that the exception to Apprendi v. Almendarez-Torres is an exceptional departure from historical practice that should be narrowly construed. In Earlinger, the court was specifically looking at the Armed Career Criminal Act, which permits federal defendants to be sentenced to a mandatory minimum of 15 years in prison if they had three or more prior qualifying felony convictions that occurred on separate occasions. In Earlinger, the court held that the Armed Career Criminal Act requires that the jury and not the judge make the decision that the defendant's prior convictions occurred on separate occasions. Again, the court emphasized that efficiency is not a concern, and even though in most cases the determination that the prior convictions occurred on separate occasions will be a simple and straightforward one, that determination still ultimately must rest with the jury to be found beyond a reasonable doubt and cannot be determined by the judge by a preponderance of the evidence. The Illinois extended term sentencing statute is similar to the Armed Career Criminal Act. The extended term sentencing statute at issue here is 730 ILCS 5-5-5-3.2, subsection B1. That holds that a defendant may be sentenced to an extended term range if they have a prior conviction that is within the last 10 years, excluding time in custody, if that prior conviction is for the same or greater class as the present conviction, if that prior conviction was separately brought and tried and most relevant to Erlinger, if that prior conviction arose out of a different series of acts than the present conviction. The separate occasions inquiry in Erlinger is really indistinguishable from Illinois' requirement that the prior and present conviction arises out of a different series of acts. It is true the Armed Career Criminal Act requires three prior convictions, while the Illinois statute only requires one. But the reality is that determining whether a prior and present conviction arose out of a different series of acts is essentially the same factual determination as whether three prior convictions occurred on separate occasions. The extended term statute also goes beyond the mere fact of conviction, the crime and its elements, in that it requires findings that the prior conviction occurred within the last 10 years, excluding time in custody. That is a fact that is not merely part of the prior crime and its elements. It goes beyond the fact finding permitted by Almendarez-Torres and goes into the territory prohibited by Erlinger. The Illinois statute does not simply punish an offender with a prior conviction or a particular type of prior conviction. The statute is trying to capture an enduring pattern of behavior that is worthy of greater punishment than the normal range, and it serves the same purpose as the Armed Career Criminal Act. Looking for that enduring pattern of behavior requires fact finding that goes beyond the mere fact of a prior conviction. We have statutes in Illinois that fall within the exception permitted by Almendarez-Torres. Those statutes permit an enhanced sentencing range, or really enhancing the classification of the offense based on just a prior conviction. But this extended term sentencing statute goes beyond that. It requires additional fact finding that must go to the jury. Erlinger emphasized over and over that the straightforwardness of this inquiry is irrelevant. Efficiency is irrelevant. The defendant is entitled to his right to a jury trial, and that includes his right to have the jury determine whether he is eligible for a sentencing enhancement. The right to a jury trial does not depend on the strength of the evidence against you. This court should find that the error in Mr. Holman's case was either a structural error as a matter of federal law or second-pronged plain error under state law. Talking about federal law, Erlinger does not mention harmless error. And it is not just that the majority is silent on harmless error. This is in contrast to the concurrence and the dissent, both of which discuss harmless error. Chief Justice Roberts' concurring opinion would have remanded the case to the court of appeals to determine whether the error was harmless, while the dissent would have found that the error was harmless. The majority opinion mentions no such analysis and does not strive to determine whether the defendant in that case, whether his prior convictions did occur on separate occasions. Instead, the court stated that the defendant has the right to a jury trial, regardless of how overwhelming the evidence may seem to a judge. Because the Erlinger decision is silent on harmless error and really suggests that the error is structural in nature, at least one state court in New Jersey has held that Erlinger errors are structural, absent any further guidance from the United States Supreme Court. But even if the error is harmless as a matter of federal law, this state should consider that the error qualifies as second-pronged plain error. An Erlinger error defies harmless error analysis. Second-pronged plain errors defy that analysis, and that is what occurs here. There is no way for the appellate court to make a determination that the trial court constitutionally could not do so. The appellate court is never in a better position to make findings of fact than the trial court, as this court is well aware. At best, there are equals. And in Erlinger, the court made clear that this type of decision, determining whether a defendant is extended term eligible based on facts that go beyond the mere fact of a conviction, should go to the jury and not to the judge. And so this court cannot apply harmless error analysis without going afoul of the entire basis of Apprendi and, in turn, Erlinger. In Thoreau, the Illinois Supreme Court held that Apprendi errors are subject to harmless error analysis. However, that ruling was based only on federal precedent. The Thoreau court, the majority at least, felt that it was bound by a United States Supreme Court decision in Nader, the United States, to determine that Apprendi errors are harmless. The dissent in Thoreau disagreed, but the majority and dissent shared a common understanding, which is that in an ideal world, Apprendi errors and errors like Apprendi errors would not be subject to a harmless error analysis because it creates a sort of traditional hypocrisy, wherein the appellate court is asked to make the same determination that the trial court could not. The Thoreau court was very clear that that kind of harmless error analysis simply does not make sense in the Apprendi context. And this court should find, because Thoreau was only based on federal precedent and not based on state law grounds, this court should find that an Erlinger error is second-pronged plain error. The trial court's finding violated Holman's right to a jury trial, and this court should reduce Holman's sentence to lie within the non-extended range or remain for a new sentencing hearing. Counsel, how about the argument regarding mitigating factors? Yes, Your Honor. Regarding the second argument that Mr. Holman raised in his briefing, the trial court made an erroneous finding that Holman's conduct failed to mitigate harm to the victim. This was in the court's discussion of mitigating factors. The court had been asked to consider whether Holman's conduct caused or threatened serious harm. Specifically, trial counsel was arguing that there was insufficient evidence, and really the trial counsel was arguing that the trial court should find that Holman's conduct did not cause or threaten serious harm. And instead of making a finding either way on the issue, the trial court initially commented that the victim appeared to be out cold and injured. And then later, the court stated, even interpreting the facts as the jury may have interpreted them to be, that the defendant took the keys of someone who was passed out and injured and left him there, even that appears to at least not mitigate harm to the victim, if not make it worse. Based on the trial court's freezing, it appears that really the court was considering this perhaps as a factor in aggravation. It certainly was considering it as part of Holman's conduct. And this simply is not a factor that is acknowledged by any of the sensing factors permitted under Illinois law, either the aggravating or mitigating factors. There is no criminal liability for failing to assist someone who was injured. There is only liability if the individual has actually caused injury. The prosecutor also made comments along the same vein, stating that by taking keys from a passed-out man, that demonstrated a significant disregard for his life. So this was sort of a theme throughout sensing, that even assuming that Holman merely came upon Wayne and took his keys, that that somehow actually harmed him or did not mitigate harm to him. How did it mitigate harm to him? It didn't mitigate harm, but the court's consideration of whether there was any mitigation of harm, that's not an appropriate consideration for the trial court. It's not any of the sensing factors. And the way that the trial court discussed this finding, it seems to be that the trial court was almost considering it in aggravation, and certainly using it as a reason not to apply any factor in mitigation. There was no evidence that Wayne was injured. The EMT who testified at trial noted no injuries when he examined Wayne before taking him into the ambulance. There was no bruising, no bleeding. The EMT simply concluded that Wayne must have passed out from drinking. There was no reliable evidence even that Holman actually punched Wayne. The two eyewitnesses were intoxicated themselves, and they stated that the alleged battery occurred in two separate locations. There is a distinction between serious harm and harm. And even if Holman punched Wayne, that's not evidence of serious harm. It seems that the trial court really misinterpreted the mitigating factor. And instead of deciding whether the conduct did not cause or threaten serious harm, the court simply decided that Holman's conduct failed to mitigate harm. And failing to mitigate harm is not the same as causing or threatening serious harm. One of the more interesting questions for this court to decide is whether the evidence in this case at sentencing was closely balanced. The Supreme Court's recent decision in Johnson has eschewed the use of second-prong plane error for improper sentencing factors. And so that leaves this court in the position of having to determine, first, what it means for evidence at sentencing to be closely balanced, and, second, whether the evidence in this case was closely balanced. Because the trial process and the sentencing process result in different outcomes, the closely balanced inquiry should work in different ways. At trial, the result is binary. Either the defendant is found guilty or not guilty. And so evidence that might push that lever one way or the other, in circumstances, that evidence may be closely balanced. But sentencing is a sliding scale. The range of outcomes at sentencing is really infinite. And so in determining whether the evidence at sentencing is closely balanced, you consider could the sentence have been even one day lesser. It seems then that would amount to the evidence at sentencing being closely balanced. Here, the difference in the trial court's improper ruling would have been the difference between finding some mitigation and no mitigation. And that seems like a great difference, where Holman was ultimately sentenced to six years in prison. Counsel, I'd like to suggest to you that a statement you made regarding the permutations being infinite, I've had a little math in my life, and Isaac Asimov wrote 1, 2, 3, infinity. And so I would like clarification as to how big this infinity is that you think relative to whether or not he was or wasn't guilty of battering this individual, possibly even stealing his keys. To me, this isn't a question of infinite variations on a theme. This is like maybe six or seven permutations of whether or not there should have been an aggravating factor or factors. And as you point out about Apprendi, what exactly are the facts that are relevant and materials that would need to be proved to the jury that should result in a different decision than was made? The outcome at sentencing, it's not just whether certain factors are applied. Really, the outcome at sentencing is the sentence. It's the sentence that the defendant is given. Maybe not technically in a mathematical sense, it's infinite, but there are so many different possibilities the judge has to choose from at sentencing that the use of an improper factor or the choice to deny the use of a factor in mitigation, Well, let's narrow it down even further, which is there are parameters. Would you agree that there's an exercise of discretion somewhere in this formula? Yes, of course, and that is what is permitted under Apprendi. If there's an exercise of discretion, then what are the parameters or the outer limits, the highs and the lows that the court could have come up with that would not have been error? And what would have been error as an abuse of discretion, for instance? In other words, give me a road map. Give me a temperature gauge, a rain gauge. Tell me exactly how much error, if there was any error at all. I can't say what an appropriate sentencing range for this defendant would have been. I am not the trial judge. Don't you have to establish an abuse of discretion? Yes, Your Honor. The standard at sentencing is an abuse of discretion. However, the standard for determining whether an improper factor applied is de novo. And so in determining whether the court's use of this improper factor was, in fact, improper, that is de novo. We're not simply looking at a case where the defendant is contesting that his sentence was excessive. It's that the judge used an improper factor, and this court needs to consider in the first instance whether that is the case. Statutorily, the range that the trial court could have sentenced him to was anywhere between 2 and 10 years in prison. But it can't be ignored that the court was using this erroneous factor, that he failed to mitigate harm. Assuming he used an erroneous factor, doesn't that mean that there is a spread as to the sentence that might be given based upon this erroneous factor? In theory, yes, Your Honor. I don't have to answer that because the next step in the question is, okay, if there was an abuse of discretion, how much did it affect the sentence? Because if we're supposed to either reduce it or remand it back for hearing, it would be nice to know how much more was wrong. I think only the trial court can consider that fact after they've been instructed not to apply any improper factors. This court is not in the business of determining exactly what the appropriate sentence was or even what, you know, a more appropriate range would have been. I think this court just needs to determine that there was an improper factor. And we can tell that the evidence of sentencing was closely balanced because it was in the middle of the sentencing range. That's one of the factors that courts had previously considered in applying first-prong plain error in these sorts of cases in the sentencing context. Here, because harm was not given the minimum of 2 years, nor was he given the maximum of 10 years, this court really needs to consider that it seems that the use of an improper factor could have swayed the court in either direction. He could have been given a sentence of 5 years or 4 years or 3 years. His sentence might have been significantly reduced had the court not considered that factor. All right, thank you, counsel. You will have your full time on rebuttal. Ms. Campbell, you may begin when ready. Good morning. Good morning, your honors. My name is Diane Campbell. I represent the people of the state of Illinois this morning. And first of all, I need to apologize to the court and counsel. In my brief, as I was reviewing for preparation, I referred to Justice Kavanaugh as concurring. He is actually dissenting. So I apologize for that. I just want to get that clear. The reason – let me backtrack for a second. Would you like me to address argument two first or argument one? Do you have a choice? I will proceed then with argument one. The reason that Justice Kavanaugh's dissent is so appealing is because the holding in Ehrlinger is very strict and very narrow. In fact, at 835, the court says, while recognizing Mr. Ehrlinger was entitled to have a jury resolve ACAA's occasions inquiry unanimously, un-unanimously, and beyond a reasonable doubt, we decide no more than that. So the court did not address this case, which is vastly different from that. Here in ACAA, the people are required to prove three predicate offenses. They must be, I believe that it's violent or serious drug charges, and that the state is then required to prove that they are a series of events and not based on the same act. So this case, the court was looking at just the defendant's single armed violence conviction. And that leads me into my invited error argument. Isn't the timing also a fact? Not in this case, because in this case, all that the defendant was requesting was the fact of the conviction be not submitted to the jury. That is exactly in line with Apprendi, which holds that the exception, okay, facts which increase a defendant's sentence must be found by a jury beyond a reasonable doubt, not a court by a preponderance, except for the fact of a conviction. That is all that is at issue in this case. I will also go into the harmless error argument, which I come up later. But that will address that. In this case, I set out the hearing at the defense counsel's argument at the motion in limine on page 5 and 6 of my brief. And that is at supplemental record 34 to 35. There, the defendant specifically argues that he does not want the armed violence conviction to be presented to the jury. In fact, on page 6, I add some emphasis. I would ask the court to keep that armed violence out. So it is the defendant himself who has requested that the fact of the conviction be excluded in this case. Now he comes and he argues that that was error. I cite a number of cases in my brief regarding invited error. I particularly cited Luciano. And in that case, the court knows that it is fundamentally unfair to a defendant to procure proceeding in a certain manner at trial court and then argue on appeal to the contrary. That is exactly what happened here. At the motion in limine, the defendant argued not to the jury, could not see that it was too prejudicial. So he has invited this error. This court should not be considering this issue at all. I'm going to then switch to a harmless error argument. And that in part is found in Cockwood, which I submitted as additional authority and this court granted it. That held specifically that Ehrlinger does not change or narrow apprentice exception, that the jury is not required to find prior convictions. It reiterated, the court in Cockwood noted at 19 that the Ehrlinger reiterated that the sentencing court may not determine what defendant actually did or the manner in which he committed the prior offenses. Obviously, in this case, if defense counsel does not want the fact of conviction going in, he does not want details about the manner in which defendant committed it. And then in section, sorry, at 22, the court says that even assuming there was a factual issue the state was required to prove at trial, no prejudice from alleged apprendee violations if undisputed evidence shows the state could prove beyond reasonable doubt the sentencing enhancing factors. That's at 20. And if we refer again to my brief at page 5, which is supplemental record 34, I do agree with the state that the other portions of the Illinois 609 are met as the armed violent conviction is a, well, I'm asserting that, is a felony and less than 10 years have elapsed since he was released from confinement. So here we have indisputable evidence that this was a qualifying offense. I also would note that if the defendant had not invited this error, which deprived the people of the opportunity to then prove up more specific information. Had defendant contested this, the state could have brought forth whatever information. But also I would note that regarding some of the other qualifications, such as series of, or whether it's based on the same act, and also regarding the timing of the prior. If the defendant was going to challenge the qualifications of that prior, his best strategy would have been a motion for compulsory joinder and dismissing the charge before it even came to be a jury issue. That did not happen here. That is where we could have litigated those additional elements if they were required, although Apprendi obviously does not require that. So counsel, on the invited error, is there a difference between the use of the conviction as impeachment as opposed to for sentencing later? I mean, could not a jury be able to decide the sentencing question? Even if I'm in the guilt phase, it's not to consider, right? If they don't want it in for prejudice, it's prejudicial more than probative, right? So the defense does not want that in for a guilt finding. Could not the jury be kept for purposes of making a finding in sentencing? Let me refer to... This appellate court, the 2nd District in People v. Watson, which I cite in my brief, says that nothing in Apprendi requires a hybrid procedure. The court said that it could conceivably... It could conceive of a case where the defendant might legitimately dispute the accuracy of records of prior convictions, but that would be expected to be extremely rare. So... We're talking about a prior conviction, not prior bad acts. Right. So in this case, particularly where the defendant didn't differentiate that, and the state was not given any opportunity to present anything, the defendant's outright argument that the armed violence conviction should not be introduced to the jury is invited here. Well, so then, assuming that, then they're saying that the 10-year fact is separate or apart from the mere fact of conviction in Apprendi. Harmless error here. The defense counsel admitted that was within the 10-year argument. And, as I said, that was also in Coopwood, which addresses Ehrlinger specifically. In Coopwood, the court also refers to a case, People v. Jackson, and that has a fairly thorough review of Ehrlinger. And Jackson holds... Its title is kind of, Ehrlinger does not require the jury to find evidence of prior convictions or determine time of conviction or if related to the offense. So, again, there are conceivably situations where it might be a legitimate argument, but that is not the case here. The defendant specifically said he did not want the fact of conviction submitted to the jury. That is precisely what Apprendi finds as an exception. And also, regarding invited error precludes plain error, but the court has continually held that it would, if anything, be first-pronged plain error. That's in Faroe and Luciano. Also, Ratliff, which is Illinois Supreme Court, 2024, said that second-pronged structural error... It's not second-pronged structural error if you can apply harmless error argument. And Ratliff noted in that case that the defendant did not allege ineffective assistance of counsel. The same occurred here. Defendant has not alleged ineffective assistance of trial counsel, only trial court here. All right, counsel, I wanted to give you time to address the mitigating factors. Does a factor in aggravation or in mitigation have to be listed in the statute, or can the court take in other factors? The court takes in other factors. In this case, clearly the defendant's conduct in action goes to his attitude and the circumstances of the offense. That is always appropriate for the trial court to consider. In this case, the trial court did not fail to consider the factor. It merely disagreed with the defendant's argument. So this is an abuse of discretion standard. So what about the phrasing of the trial court's language here? Their argument is that the failure to mitigate was a factor in aggravation. That is actually in response to the defendant's argument that the court should apply it as a mitigating factor. As I said, the court, because of the specific circumstances here, did not. I agree with the defense that the defendant did not have a duty to aid the victim or to prevent harm to him. He could have merely passed by as many other people did in the video. Instead, the defendant came and according, remembering that this is a theft from a person case. That is what the defendant was being sentenced for. So the trial court found that the defendant coming and stealing the keys of the unconscious person did not cause harm, but it didn't really mitigate harm either. So I think that is, he's putting it in the context of the actual sequence of events and the particular facts of this case. And the trial court did at 734 to 735s that it's not finding it in mitigation under the circumstances, but not applying it in aggravation either. What the court did apply in aggravation was the need to deter others. That is 733. Can I wrap this up? It considered from the impounded record at 22, very high risk for the defendant to engage in criminal conduct. And most importantly, it considered the aggravating factor of the defendant's criminal history. I set that out in my brief at 30 to 31. He was 48 years old when he committed the offense. 50 when he was sentenced. He had been in prison for 17 and a half years, except for 35 days, until he was last paroled January 22nd of 2021. He had a juvenile record. His probation was continually revoked until he was removed from a shelter and sent to juvenile DOC. He had 26 adult convictions. He was sentenced to three years, three years, 12 years, and five years. He had six violations of parole. In DOC, he had 48 major and 20 minor incidents. And he was on four other, he had four other pending charges when this trial took place. The court found that the only amount of time in which the defendant was not committing crimes was when he was incarcerated. And that's at 732. Your Honors asked about the range of sentence. It is two to 10 years. Here, defendant's six-year sentence was only one year into the extended term, four years below the maximum. It was served at 50% with credit for 647 days. And he was also eligible for day-for-day. That's at my brief at 23. So clearly this is the, any contemplation of the, whether it could be applied in a theft-from-person situation, where the defendant failed to cause serious harm, was vastly overshadowed, and basically irrelevance of the judge found it was kind of a washout. It was based on the defendant's criminal history, which more than fully justified the six-year sentence. All right. Thank you, counsel. Congress, as soon as you may argue. Opposing counsel claims that Erlinger was a narrow decision. Really, Erlinger clarified that the exception to Apprendi is narrow. The exception at Apprendi, the exception to Apprendi, Elmendorf, Suarez, permits a judge to find the fact of a prior conviction, that is, the crime and its elements, and no more. That is a clear prohibition on any other kind of fact-finding. That's not a narrow decision. That decision actually has a lot of consequences for defendants being sentenced under the Armed Career Criminal Act and under any similar state law that involves persistent offender statutes and persistent statutes that go beyond the mere fact of a prior conviction. This is not a case of invited error. As Justice Kennedy pointed out, there is a difference between evidence being used for impeachment at the guilt phase and evidence being used to enhance the defendant's sentence at sentencing. That's the whole reason that Erlinger talks about this bifurcation procedure. It's because the Erlinger court and all of the courts prior to it, Apprendi and Elmendorf, Suarez, were concerned about the prejudice of introducing this prior conviction. And so Erlinger finally provides the answer, we'll bifurcate the proceedings so that the jury would not have to hear about the prior conviction at the guilt phase and would only have to hear about it at sentencing when it became relevant to their determination. So it is not inconsistent with Erlinger for trial counsel to have argued to the court to exclude the conviction under Montgomery. It is also notable that Erlinger was decided a year after Holman was sentenced. And so that trial counsel was not trying to deceive the trial court in making some sort of argument that would be contrary to then existing precedent. Trial counsel simply could not have anticipated that Erlinger was going to be decided the way it was. And so the trial counsel's error really was not objecting. This court should not follow the decision in Coopwood. For one thing, Coopwood was a bench trial, not a jury trial. So the defendant in Coopwood presumably waived his right to have the jury determine that he was extended term eligible. Also, the court in Coopwood noted that copies of the defendant's prior convictions were admitted during the bench trial. That's a completely different situation than what we have here where the jury did not hear about Holman's prior convictions because there was no separate sentencing phase for them to consider. Coopwood stands by the opposing counsel's argument that Erlinger was a narrow decision. But that is something correct. As I've stated, Erlinger clarified that any facts related to a prior conviction, if they are not the prior convictions themselves, those facts fall outside the scope of a plendy. Also, the Coopwood decision did quite little analysis of the Erlinger issue, and it would be a disservice to this court to simply follow their reasoning. Talking about the second sentencing issue, the fact that the trial court stated that Holman's conduct did not mitigate harm, although the trial court is allowed to consider facts outside the sentencing factors, this goes so far outside the sentencing factors that the trial court is to consider. The factors for the court to consider are whether the defendant's conduct threatened or caused serious harm, not even normal harm. And then to go further than that, take it a step further and say that he did not mitigate harm, that's not a responsibility that we place on anyone, even in the civil law context. You would not be liable in tort law for failing to mitigate harm that you did not cause. So there really is no justification for the trial court to make this reasoning that he did not mitigate harm. Again, it's not supported by the record. There was really no evidence that he was injured, and there was very little evidence, no credible evidence that he actually harmed Wayne. The difference here is the difference between there being some mitigation versus no mitigation. As opposing counsel pointed out, yes, Holman had an extensive criminal history, and that certainly weighed heavily in aggravation, but that means that the court's consideration of the improper factor is all the more troubling. Because Holman had no mitigating factors on his side, that means that the court's consideration likely weighed heavily in the court's decision to sentence him to six years in prison. This is not an instance where we can easily determine that the court's use of the improper factor had no effect. Holman wasn't given a sentence of two years or even near the minimum, near three years. He was given a sentence of six years. That's right in the middle of the range. The Illinois — not the Illinois Supreme Court, but the Illinois Appellate Court in Martin determined that — or actually, no, it was the Illinois Supreme Court in Martin — determined that it was first-pronged plain error to consider an improper factor because the court could not conclude that consideration was so insubstantial that it did not affect the length of the sentence. And — You may conclude, counsel. For those reasons, Your Honor, this court should either reduce Holman's sentence to allow the Illinois extended range or remand for a new sentencing hearing because the trial court usurped the jury's rule in finding that he was extended-term eligible and considered an improper factor in finding that he did not mitigate harm to the victim. Thank you. Counsel, did you hear opposing counsel's comments regarding the historical background of this individual and how he seemed to be a chronic criminal? Yes, Your Honor. Mr. Holman's record was discussed in detail at sentencing. He did have a substantial criminal record. And, again, I think that points to why this was an important part of the court's consideration. You know, the most important factor for the court considered at sentencing is not the defendant's prior conduct but their present conduct, the crime for which they were actually convicted at this point. And the trial court's new determination that Holman was a chronic offender, that he was a persistent offender, while that could be considered to give a sentence in range, certainly the trial court's determination by a preponderance of the evidence cannot substitute for a jury finding beyond a reasonable doubt that Holman actually qualified under the extended-term statute. So to the extent that your question is really getting at issue at one, Your Honor, I think that he was. But he was within the range, right? Yes, Your Honor. His sentence was within the 2- to 10-year range. My point was that the judge could not make the appropriate determination at sentencing that Holman was extended-term eligible for all the reasons discussed in Erlinger. Really, the correct range would have been 2 to 5 years. And so in that sense, his 6-year sentence fell outside of that range. It's only if this Court finds that the extended-term range was applicable, that Erlinger errors are subject to harmless error analysis, that it would be within range. But still, a sentence within range can be an abuse of discretion. Can it? Yes, Your Honor. There's plenty of case law that says if you're within the range, how do you find an abuse of discretion? Well, in here, the problem is the improper factor, and that's something for this Court to consider de novo. This Court also has to look at whether the evidence was closely balanced at sensing. And that is a relatively novel question. The Illinois Supreme Court has not really given any guidance on this issue in decades, but it's something this Court needs to decide. Again, this isn't just a case of arguing the sentence was excessive. There was an improper factor, and so this Court needs to consider whether the evidence was closely balanced. And that's looking at where in the range she was sentenced. Here was the middle. So it's hard to say that the factor definitely didn't have any effect on the sentence. And I'm looking at the fact that it's difficult to say that the factor had a completely insubstantial effect. Well, he had quite a prior record, didn't he? Yes, he did, Your Honor. And, of course, that is appropriate for the tribe court to consider. So the better argument is probably the Apprendi argument, isn't it? It might be, Your Honor. That's really up for this Court to decide. And I do think the Erlinger question is something this Court needs to seriously consider. Erlinger did have a meaningful effect on the law. It clarified this whole middle ground between facts that the Court cannot consider and, well, the fact of prior conviction. And what about facts related to prior convictions? That's that middle ground that Erlinger was talking about, and they decided, no, the facts related to prior convictions, that goes beyond what we allow. It's the fact of the prior conviction that is the crime and its elements, and no more than that. Thank you. Anything else? All right, thank you very much, Counsel. I want to thank the attorneys for their arguments. We will take these under consideration. Issue a ruling in due course, and we will adjourn for the day. All rise.